UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN RODRIGUEZ BERNAL,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY BEARD, et al.,<br><br>Defendants. | No. 2:16-cv-2511 AC P<br><br>ORDER AND FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court are defendant Weeks' and plaintiff's motions for summary judgment.  ECF Nos. 51, 55.

I.   Procedural History

The undersigned screened the complaint and found that plaintiff had stated claims for retaliation and conspiracy against defendants Weeks and Arana.  ECF No. 7.  However, his property claims and claims against defendant Beard were dismissed with leave to amend.  Id. at 9. Plaintiff declined to file an amended complaint and instead chose to proceed on the complaint as screened.  ECF No. 10.  After the close of discovery, plaintiff and defendant Weeks both filed motions for summary judgment.  ECF Nos. 51, 55.  Plaintiff accepted an offer of judgment from defendant Arana, ECF Nos. 57, 60, which has been satisfied, ECF No. 63.

////

II. Plaintiff's Allegations

The complaint claims that defendants Weeks and Arana violated plaintiff's constitutional rights by conspiring to retaliate against him, and that they actually retaliated against him. ECF No. 1 at 7. Specifically, plaintiff alleges that he filed complaints against Weeks, and that due to his attempts to address Weeks' conduct, Weeks retaliated against him by searching his cell with two other officers, getting Arana to falsely state that two gallons of inmate manufactured alcohol were found, and confiscating his property. Id. at 6-8, 14, 16, 28-29.

III. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district

court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.  On the other hand,

> "[w]hen the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."

Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (quoting C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"  T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

IV. Plaintiff's Motion for Summary Judgment

Plaintiff has moved for summary judgment. ECF No. 51. However, the motion suffers from several fatal defects. First, the motion is not accompanied by a separate statement of facts, as required by Local Rule 260(a). Next, plaintiff has not provided any supporting evidence that addresses the matters at issue in this case. Finally, the motion appears to be little more than a list of the evidence plaintiff intends to present to support his claims, but does not actually include that evidence or arguments addressing why summary judgment should be granted. Id. at 1-5. Plaintiff has failed to "come forward with evidence which would entitle [him] to a directed verdict if the evidence went uncontroverted at trial," Miller, 454 F.3d at 987 (citation and internal quotation marks omitted), and his motion for summary judgment should therefore be denied.

V. Defendant Weeks' Motion for Summary Judgment

A. Defendant's Arguments

On April 23, 2020, defendant Weeks served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 55-2; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

Defendant Weeks moves for summary judgment on the grounds that he was not aware of plaintiff's complaints until after the allegedly retaliatory conduct had taken place and that plaintiff's allegations of retaliation and conspiracy are entirely speculative. Weeks also argues in his reply that he is entitled to qualified immunity and that plaintiff has not refuted that showing.

ECF No. 62 at 1, 3-4.  However, this argument was not raised in the moving papers and is therefore waived.  Graves v. Arpaio, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived." (citation omitted)).

        B.        Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."  Plaintiff has also failed to file a separate document disputing defendants' statement of undisputed facts, as required by Local Rule 260(b).

It is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof."  Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule.  Id. at 1364 n.4 (citation omitted).

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules.  However, only those assertions in the opposition which have evidentiary support in the record will be considered.

In response to the motion, plaintiff appears to summarize the facts he agrees with from defendant's undisputed statement of facts along with additional facts. ECF No. 61. He argues that defendant does not dispute their encounters, but instead disagrees with the context. Id. at 6.

VI. Undisputed Material Facts

Plaintiff did not separately respond to defendant's statement of undisputed facts. However, based on the statement of facts contained in the response, ECF No. 61 at 2-5, it appears that many of the facts are not in dispute and the facts are therefore deemed undisputed except as otherwise discussed.

At all times relevant to the complaint, plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation at High Desert State Prison, where defendant Weeks was employed as a correctional officer. ECF No. 55-3 (Defendant's Undisputed Statement of Facts) at 1, ¶¶ 1-2.

Plaintiff worked as a clerk in the B-Facility law library and was sometimes searched by defendant Weeks when going to or coming from the law library. Id. at 2, ¶ 5. On May 13, 2015, Weeks conducted a clothed body search of plaintiff, which plaintiff later complained about to the law librarian, Ms. Davis.[1] Id. at 2-3, ¶¶ 10-11. Ms. Davis then spoke with Weeks regarding the manner in which he conducted clothed body searches. Id. at 3, ¶ 11. She told him that she had seen him pull plaintiff's pants up so high that they were at plaintiff's mid-chest area and scolded Weeks, telling him that his actions were not funny or cute, and that she believed that he was harassing plaintiff. Id., ¶ 12. Approximately fifteen minutes later, Ms. Davis contacted Captain Gamberg, the B-Facility Captain, to complain about Weeks' conduct with plaintiff. Id., ¶ 13. Later that day, Captain Gamberg relayed Ms. Davis' concerns to Weeks and told Weeks that he did not want to receive any more phone calls from Ms. Davis regarding Weeks' behavior; Captian Gamberg said that defendant was to leave Ms. Davis and her law clerks, including plaintiff, alone.

---

[1] Defendant characterizes plaintiff as being "annoyed" by the search and claims that plaintiff did not express his annoyance to Weeks. ECF No. 55-3 at 2, ¶ 10. However, plaintiff's deposition, which defendant relies on in part to support this fact, reflects that plaintiff told defendant to "quit playing games" in reference to how Weeks would pull inmates' pants up behind their backs during searches. Id. at 54-55.

Id., ¶ 14.  About an hour after the discussion with Captain Gamberg, defendant approached Ms. Davis about her complaints and asked her to discuss her concerns with him before calling the Captain.  Id., ¶ 16.  On May 14, 2015, Captain Gamberg asked both plaintiff and Ms. Davis to document their concerns regarding Weeks, but he did not share these letters with defendant.  Id., ¶¶ 18-19.  Ms. Davis' letter claimed that when she had tried to address her concerns directly with Weeks, he had been dismissive and after his meeting with Captain Gamberg defendant had "chewed [her] out" and accused her of "taking the inmate's side."  Id. at 30-31.

On May 27, 2015, Weeks was conducting pat-down searches of inmates leaving the chow hall and during his search of plaintiff said "pobrecito," meaning "poor you" or "poor baby."  Id., ¶ 20.  Defendant claims that he was joking, while plaintiff understood the statement to be a threat that plaintiff would have his property taken or be transferred to administrative segregation or beaten up.  Id. at 4, ¶¶ 21-22.  Weeks also asked plaintiff, "so when did you become so sensitive?"  Id. at 35; ECF No. 61 at 3.  The following day plaintiff sent a letter to Captain Gamberg regarding the interaction with defendant, and Ms. Davis once again complained to the Captain about Weeks' continued harassment of plaintiff.  ECF No. 55-3 at 4, ¶¶ 23, 25.  Defendant was not made aware of either the letter or Ms. Davis' complaint.  Id., ¶¶ 24 26.

On June 23, 2015, Captain Gamberg authored a memorandum to the acting warden about his interactions with Ms. Davis and defendant Weeks, and addressed the letters from plaintiff.  Id., ¶ 27.  The memorandum further stated that Ms. Davis had also complained about Weeks harassing another inmate who was on the Inmate Advisory Council (IAC).  Id. at 40.  That inmate alleged that "Weeks stated that it was the opinion of staff that the IAC was snitching on staff . . . and that he (Weeks) would weather the changes and that when the Captain was transferred to another facility there would be backlash for the IAC actions by staff."  Id.  The memorandum was not shared with Weeks.  Id. at 4, ¶ 28.

On July 11, 2015, the Investigative Service Unit (ISU) conducted a search of the B-Facility law library.  Id., ¶ 29.  During the search they found pornography in one law library clerk's work area and a toner cartridge, which they treated as contraband for tattoo making, near

////

plaintiff's work area.[2]  Id., ¶¶ 30-31.  Lieutenant Harrison from ISU then ordered that the law library clerks' cells be searched and Sergeant Grammatico ordered defendant to assist with the cell searches.  Id. at 5, ¶¶ 32-34.  Defendants Weeks and Arana conducted the search of plaintiff's cell.  Id., ¶ 35.  Weeks claims to have noticed the smell of rotting fruit coming from the cell, but went to search through the papers on the desk to see if there was more pornography or other contraband while Arana searched the remainder of the cell.  Id., ¶ 36.  Arana pulled a laundry bag full of apples and a plastic bag from underneath the bottom bunk; the plastic bag appeared to Weeks to contain inmate manufactured alcohol.  Id., ¶ 37.  Weeks continued to search through the inmates' papers while Arana compared plaintiff's and his cellmate's appliances and personal property to their property lists, and seized anything not on the lists as contraband.  Id., ¶¶ 40.  Weeks did not find any contraband in the paperwork he searched.  Id.  Because Arana was the one to find the contraband items, he filled out the property seizure form and the rules violation reports for plaintiff and his cellmate.  Id., ¶ 41.  Plaintiff disputes that there was any alcohol in his cell and claims that the property seized was not contraband.  ECF No. 1 at 7-8; ECF No. 55-3 at 24, 36-37; ECF No. 61 at 6.

Although the rules violation report reflected that Sergeant Grammatico had verified the finding of inmate manufactured alcohol, Grammatico later admitted that he had not come to the housing unit or verified the existence of alcohol; the rules violation report was accordingly dismissed "in the interests of justice."  ECF No. 55-3 at 6, ¶¶ 42-47.  Sergeant Grammatico authored a report about the discrepancy in which he states that it is standard procedure for officers to complete the supplemental reports for the verifying individual to sign, and that he inadvertently signed off on the report.  Id. at 21.

At the conclusion of the investigation into Weeks' conduct, both he and Arana were dismissed from their positions as a correctional officer, but Weeks was later reinstated based on a

////

---

[2] Plaintiff's deposition states that the officers alluded to the toner being for tattoo making, and that while he could understand why they might say it looked like paraphernalia, it is not what is used to make tattoo ink.  ECF No. 55-3 at 62.

finding that the actions complained of did not warrant dismissal. Id. at 6-7 ¶¶ 52-53 and 47-48, ¶¶ 39-40.

### VII. Discussion

#### A. Retaliation

Inmates have a right to be free from the filing of false disciplinary charges in retaliation for the exercise of constitutionally protected rights. See Watison v. Carter, 668 F.3d 1108, 1115 (9th Cir. 2012); see also Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985); see also Pratt, 65 F.3d at 806.

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted) (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000); Barnett; 31 F.3d at 815-16). "Speech can be chilled even when not completely silenced." Id. at 568. As a result, a plaintiff "does not have to demonstrate that his speech was 'actually inhibited or suppressed.'" Id. at 569 (citing Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)). In addition, plaintiff does not have to demonstrate a chilling effect so long as he establishes that he suffered some other harm, like a retaliatory, adverse action. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing Rhodes, 408 F.3d at 567 n.11).

The undisputed facts show that defendant Weeks did not initiate the search of plaintiff's cell and was instead ordered to conduct the search by his supervisor in response to the discovery of other contraband. Accordingly, there is no evidence that the initiation of the search was retaliatory on Weeks' part, and summary judgment should be granted as to that portion of the claim. However, the fact that Weeks' motivation in initiating the search was not retaliatory does not mean that he did not subsequently avail himself of the opportunity to retaliate against plaintiff

by improperly confiscating his property and writing him up for a false rules violation.

To prove retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. Brodheim, 584 F.3d at 1271 (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. See McCollum v. Cal. Dep't Corr. Rehab., 647 F.3d 870, 882-83 (9th Cir. 2011); accord, Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. McCollum, 647 F.3d at 882 (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)).

Although defendant argues that he was unaware of plaintiff's protected conduct, ECF No. 55-1 at 8, the record belies this assertion. Even if the court accepts Weeks' assertion that he was not aware of plaintiff's letters until after the cell search took place, he was certainly aware that plaintiff had complained about his conduct because the complaint had led to a verbal reprimand by Captain Gamberg. Furthermore, the evidence, taken in the light most favorable to plaintiff, shows that defendant was upset enough about the complaint to confront Ms. Davis, and then approximately two weeks later made comments to plaintiff alluding to the complaint and that plaintiff was being overly sensitive and a "baby." The search of plaintiff's cell occurred approximately a month and a half after defendant's comments to plaintiff about the complaint. In light of defendant's previous behavior, this is sufficiently close in time to support an inference of retaliatory motive. Additionally, though Weeks claims that plaintiff did in fact have contraband, thus justifying the rules violation report and confiscation of property, plaintiff disputes these claims and alleges the charges were falsified. Finally, while Arana filled out the rules violation report and cell search receipt, as the court explains more fully below, there is sufficient evidence of a conspiracy between defendant and Arana to retaliate against plaintiff that a jury could find defendant was equally complicit in Arana's conduct.

In sum, with respect to the allegations that defendant Weeks retaliated against plaintiff by getting Arana to write up a false disciplinary and confiscate plaintiff's property, Weeks has not met his burden of showing "that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325). However, the undisputed evidence shows that Weeks did not initiate the search of plaintiff's cell and was instead directed to search the cell by his supervisor; summary judgment accordingly should be granted as to that issue, and the retaliation claim narrowed accordingly.

### B. Conspiracy

A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989)) (internal quotation marks omitted), and an actual deprivation of constitutional rights as a result of the alleged conspiracy, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers, 865 F.2d at 1541). Plaintiff must present facts showing an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. Woodrum, 866 F.2d at 1126; Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989) (citation omitted).

The existence of such an agreement is often alleged and proven on the basis of circumstances supporting an inference of deliberately concerted action. As the Ninth Circuit has explained,

> Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action. Moreover, "[q]uestions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment."

Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1302 (9th Cir. 1999) (alteration in original) (internal citations omitted).

> For example, a showing that the alleged conspirators have committed acts that "are unlikely to have been undertaken without an agreement" may allow a jury to infer the existence of a conspiracy. Kunik v. Racine County, 946 F.2d 1574, 1580 (7th Cir. 1991). Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, "so long as there is a possibility that the jury can 'infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached a understanding' to achieve the conspiracy's objectives." Hampton v. Hanrahan, 600 F.2d 600, 621 (7th Cir. 1979), reversed in part on other grounds, 446 U.S. 754, 100 S. Ct. 1987, 64 L. Ed. 2d 670 (1980)) (quoting Adickes v. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)).

Id. at 1301-02.

In this case, plaintiff claims that defendant Weeks conspired with Arana to retaliate against him by issuing him a rules violation based on falsified claims and confiscated his property by falsely labeling it as contraband. Assuming the truth of plaintiff's proffered testimony that the charges were false, it is unlikely that Arana would have written plaintiff up and improperly confiscated his property absent some agreement with Weeks, as Weeks was present in the cell at the time. Some agreement between the two appears even more likely given Weeks motivation to retaliate against plaintiff, as set forth above, and the lack of apparent motive on Arana's part to falsify his reports. Furthermore, while defendant avers that he did not conspire with defendant Arana,[3] ECF No. 55-3 at 48, he has not provided a declaration from Arana stating the same, and the circumstances surrounding the rules violation and confiscation of property establish sufficient joint action to provide circumstantial evidence of a conspiracy. Accordingly, the existence of a conspiracy is a factual question suitable for resolution by a jury.

Because the initiation of the search of plaintiff's cell was not retaliatory, the conspiracy claim should not go forward to the extent it is predicated on the fact of the search. However, defendant has not demonstrated the absence of a material factual dispute as to conspiracy to retaliate by charging plaintiff with a false rules violation and improperly confiscating his

////

---

[3] The court notes that defendant's declaration has not been properly executed, See L.R. 131(f) (outlining requirements for a non-attorney e-signature). However, assuming the defect can be cured, defendant's statement merely creates an issue of material fact.

property. Weeks' motion should therefore be granted in part and denied in part as to the conspiracy claim.

VIII. <u>Conclusion</u>

For the reasons set forth above, plaintiff's motion for summary judgment should be denied and defendant Weeks' motion for summary judgment should be granted in part and denied in part.

IX. <u>Plain Language Summary of this Order for a Pro Se Litigant</u>

It is being recommend that your motion for summary judgment be denied because it is not properly supported with evidence.

It is being recommended that defendant Weeks' motion for summary judgment be denied as to your retaliation and conspiracy claims to the extent that they are based on the alleged false RVR and confiscation of your property. You should be allowed to go to trial on those issues. It is being recommended that Weeks' motion be granted to the extent that your claims are based on the fact of the cell search, because the undisputed evidence shows that Weeks did not make the decision to search your cell.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall randomly assign a United States District Judge to this action.

IT IS FURTHER RECOMMENDED that:

1. Plaintiff's motion for summary judgment, ECF No. 51, be DENIED.

2. Defendant Weeks' motion for summary judgment, ECF No. 55, be GRANTED in part and DENIED in part as follows:

    a. GRANTED to the extent that plaintiff's retaliation and conspiracy claims are predicated on the search of plaintiff's cell, and

    b. Otherwise DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 1, 2021

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE